# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:07-CV-1492 CAS |
| | ) | |
| PARAGON HOME LENDING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff CitiMortgage, Inc.'s ("CMI") motion for entry of default judgment against defendant Paragon Home Lending, LLC ("Paragon"). [Doc. 32] Plaintiff's motion is accompanied by affidavits and exhibits. On February 15, 2008, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of the Court entered default against Paragon. [Doc. 31]. On September 2, 2008, the Court held an evidentiary hearing on plaintiff's motion for default judgment. Plaintiff submitted additional exhibits at the hearing. For the following reasons, the Court will grant plaintiff default judgment in the amount of $1,686,867.74.

**I.   Background**

On August 21, 2007, CMI filed a complaint against Paragon alleging two counts of breach of contract arising out of sales of mortgage loans. According to the complaint, CMI and Paragon were in the business of purchasing, reselling and, servicing residential mortgage loans on the secondary mortgage market. CMI avers that the parties and CMI's predecessor-in-interest entered into two separate agreements – a July 19, 1999 Whole Sale Agreement and a Corresponding Agreement Form 202, dated February 7, 2005. CMI alleges in the complaint that Paragon breached these agreements in that it delivered to CMI and its predecessor-in-interest a number of loans that did not meet various requirements under the two agreements. In the complaint, CMI claims that

Paragon now owns CMI fees and damages on account of repurchase, indemnification, and reimbursement due on non-performing loans. For relief, CMI seeks in its complaint actual and consequential damages incurred as a result of Paragon's breaches of contract, plus prejudgment interest, post judgment interest, and attorneys' fees and costs.

Paragon was served with summons and the complaint on August 27, 2007. On September 27, 2007, Paragon filed its answer. The Court entered a Case Management Order ("CMO") on November 6, 2007, after holding a scheduling conference on November 2, 2007. In the CMO, the Court set November 16, 2007, as the deadline by which both parties were to submit their Rule 26(a)(1) disclosures. Paragon did not serve CMI with any Rule 26(a)(1) disclosures.

On December 10, 2007, CMI filed a motion to compel Paragon to comply with the CMO. Paragon did not respond to CMI's motion to compel. On December 21, 2007, and in response to the Court's December 19, 2007 Order, CMI filed an amended complaint.[1] Paragon did not answer or otherwise respond to CMI's amended complaint. On December 7, 2007, Paragon's counsel filed a motion to withdraw as counsel. According to the motion, Paragon had advised its counsel that "the company was closing," and that it had consented to his withdrawal.

In an Order dated December 27, 2007, this Court directed Paragon to obtain substitute counsel or face the prospect that it might be subject to a default judgment in CMI's favor. The Court allowed defendant and its counsel a withdrawal period and ordered the entry of appearance by substitute counsel by no later than January 28, 2008. Paragon did not obtain substitute counsel or

---

[1]This case is before the Court on diversity subject matter jurisdiction. On December 19, 2007, the Court ordered plaintiff to file an amended complaint because plaintiff had not adequately alleged the citizenship for Paragon, which is a limited liability company. Plaintiff filed an amended complaint on December 21, 2007, which is nearly identical to the original complaint, with the exception of the jurisdictional allegations.

otherwise respond to this Court's Order. After the withdrawal period expired, CMI moved to strike Paragon's pleadings.

On February 14, 2008, the Court allowed defendant's counsel to withdraw, and it struck Paragon's answer to the original complaint. Additionally, CMI moved for the entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, and the Clerk of the Court entered a default against Paragon on February 15, 2008. CMI then moved for the entry of a default judgment, which is the motion presently before the Court. CMI has submitted in connection with its motion for default judgment the affidavits of Wayne Flynn and Andrew Petrie and numerous exhibits. The Court held an evidentiary hearing on this matter on September 2, 2008, and the matter is now ready for ruling.

## II. Default Judgment Standard

While the entry of a default judgment should be a "rare judicial act" Comiskey v. JFTJ Corp., 989 F.2d 1007, 1009 (8th Cir. 1993), it is appropriate in this case. A corporation is an artificial entity that can only act through agents, cannot appear pro se, and must be represented by counsel. Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993); Schoemehl v. All-Tech Security, Inc., No. 4:06-CV-1556 CAS, 2007 WL 1992168, * 2 (E.D. Mo. July 2, 2007); (Woods v. K.C. Masterpiece, 2006 WL 1875524, at *1 (E.D. Mo. June 30, 2006). Here, defendant Paragon has ignored Court orders and failed to hire substitute counsel. Accordingly, its pleadings were stricken from the record and a default was entered against it pursuant to Fed.R.Civ.P. 55(a), which is a prerequisite to the granting of a default judgment under Rule 55(b). Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998).

Prior to the entry of a discretionary default judgment, however, the Court must satisfy itself that the moving party is entitled to judgment, including by reviewing the sufficiency of the complaint,

and the underlying substantive merits of his claim. 10 James Wm. Moore et al., Moore's Federal Practice § 55.20[2][b] (3d ed. 2007); Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980). "A default judgment by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint." Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th Cir. 2004) (citing Taylor v. City of Ballwin, 859 F.2d 1330, 1333 n. 7 (8th Cir. 1988)). Where default has been entered, the "allegations of the complaint, except as to the amount of damages are taken as true." Brown v. Kenron Aluminum & Glass Corp., 477 F.2d 526, 531 (8th Cir. 1973). If the damages claim is indefinite or uncertain, the amount of damages must be proved in a supplemental hearing or proceeding to a reasonable degree of certainty. Everyday Learning Corp. v. Larson, 242 F.3d 815, 818-19 (8th Cir. 2001).

Here, the Court takes the allegations CMI made in its amended complaint as true, except for those allegations as to the amount of damages, and finds CMI is entitled to default judgment. East Maine Baptist Church v. Regions Bank, No. 4:05-CV-962 CAS, 2008 WL 1732936, at *1 (E.D. Mo. Apr. 10, 2008) (quoting Brown v. Kenron Aluminum & Gas Corp., 477 F.2d 526, 531 (8th Cir. 1973)); see Taylor v. City of Ballwin, 859 F.2d 1330, 1333. n.7 (8th Cir. 1988) ("[A] defendant on default has no further standing to contest the factual allegations of plaintiff's claim for relief.") (internal quotes and quoted authority omitted); Woods, 2006 WL 1875524, at *2 ("A default judgment by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint.") (quoted authority omitted). As for damages, the Court set and held and evidentiary hearing in this matter, and plaintiff submitted numerous affidavits and exhibits in support of the damages it seeks.

### III.     Findings of Fact Regarding Damages

Based upon the evidence CMI presented in its papers and at the evidentiary hearing held on

September 2, 2008,[2] the Court makes the following findings and conclusions regarding damages and attorneys' fees and costs:

**A. Amounts Due on the Loans**

This Court finds that CMI is entitled to the following amounts in damages broken down by individual loan:

<u>The Alston loan</u>:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 3 to the affidavit of Wayne Flynn ("Flynn Affidavit")), and as explained by the Flynn Affidavit at Paragraph 18, CMI is entitled to reimbursement in the amount of $12,106.77.

b. Pursuant to Section 19.2 of the Whole Loan Sale Agreement ("Agreement") (attached as Exhibit 1 to the Flynn Affidavit), the origin screen for the Alston loan (attached as Exhibit 4 to the Flynn Affidavit), and Paragraph 18 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.625%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008,[3] totaling $8,127.12.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

---

[2]At the September 2, 2008 hearing, CMI proceeded by making offers of proof, including that if called, Mr. Wayne Flynn would testify as set forth in his Affidavit. Mr. Flynn was available to testify at the hearing.

[3]At the September 2, 2008 hearing, the Court offered CMI the opportunity to update its prejudgment interest calculations, and CMI declined to do so.

The Anderson loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 5 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 19, CMI is entitled to reimbursement in the amount of $29,932.61.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Anderson loan (attached as Exhibit 6 to the Flynn Affidavit), and Paragraph 19 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.000%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $18,344.73.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Bat loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 7 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 20, CMI is entitled to reimbursement in the amount of $108,023.60.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Bat loan (attached as Exhibit 8 to the Flynn Affidavit), and Paragraph 20 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.500%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $115,828.18.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Blanks loan:

 a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 9 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 21, CMI is entitled to reimbursement in the amount of $54,934.40.

 b. Pursuant to Section 19.2 of the Agreement, the promissory note for the Blanks loan (attached as Exhibit 10 to the Flynn Affidavit), and Paragraph 21 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.250%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $17,987.06.

 c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Blanton loan:

 a. CMI removed the Blanton loan from its records as a charge-off after Paragon failed to repurchase it. Pursuant to the loss reimbursement worksheet on this loan charge-off (attached as Exhibit 11 to the Flynn Affidavit), CMI is entitled to reimbursement in the amount of $71,102.16.

 b. CMI is not asking for accrued interest on this loan. [Flynn Aff. ¶ 22].

 c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Boldt loan:

 a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 12 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 23, CMI is entitled to reimbursement in the amount of $24,685.29.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Boldt loan (attached as Exhibit 13 to the Flynn Affidavit), and Paragraph 23 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.000%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $42,279.10.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Brooks loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 14 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 24, CMI is entitled to reimbursement in the amount of $38,108.23.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Brooks loan (attached as Exhibit 15 to the Flynn Affidavit), and Paragraph 24 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.000%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $14,083.97.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Crier loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 16 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 25, CMI is entitled to reimbursement in the amount of $42,391.22.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Crier loan (attached as Exhibit 17 to the Flynn Affidavit), and Paragraph 25 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.875%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $6,460.63.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Dixon loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 18 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 26, CMI is entitled to a reimbursement amount of $45,572.73.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Dixon loan (attached as Exhibit 19 to the Flynn Affidavit), and Paragraph 26 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 8.250%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $22,307.00.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Dubois loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 20 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 27, CMI is entitled to reimbursement in the amount of $74,124.19.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Dubois loan (attached as Exhibit 21 to the Flynn Affidavit), and Paragraph 27 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.250%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $25,734.51.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Ferrell loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 22 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 28, CMI is entitled to reimbursement in the amount of $42,889.87.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Ferrell loan (attached as Exhibit 23 to the Flynn Affidavit), and Paragraph 28 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 6.875%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $14,186.76.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Hall loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 24 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 29, CMI is entitled to reimbursement in the amount of $49,249.62.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Hall loan (attached as Exhibit 25 to the Flynn Affidavit), and Paragraph 29 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.875%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $20,354.00.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Hoagland loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 26 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 30, CMI is entitled to reimbursement in the amount of $60,455.75.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Hoagland loan (attached as Exhibit 27 to the Flynn Affidavit), and Paragraph 30 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 6.875%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $53,344.97.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Johnson Loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 28 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 31, CMI is entitled to reimbursement in the amount of $55,980.69.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Johnson loan (attached as Exhibit 29 to the Flynn Affidavit), and Paragraph 31 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 8.250%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $16,479.06.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Lyczynski loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 30 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 32, CMI is entitled to reimbursement in the amount of $30,300.72.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Lyczynski loan (attached as Exhibit 31 to the Flynn Affidavit), and Paragraph 32 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 6.250%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $14,697.20.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The McNair loan (1):

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 32 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 33, CMI is entitled to reimbursement in the amount of $59,475.29.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the McNair loan (1) (attached as Exhibit 33 to the Flynn Affidavit), and Paragraph 33 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 6.625%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $13,192.85.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The McNair loan (2):

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 34 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 34, CMI is entitled to reimbursement in the amount of $46,539.98.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the McNair loan (2) (attached as Exhibit 35 to the Flynn Affidavit), and Paragraph 34 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 6.625%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $13,268.88.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Midock loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 36 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 35, CMI is entitled to reimbursement in the amount of $61,392.34.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Midock loan (attached as Exhibit 37 to the Flynn Affidavit), and Paragraph 35 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 5.000%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $36,146.33.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The O'Neal loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 38 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 36, CMI is entitled to reimbursement in the amount of $49,113.51.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the O'Neal loan (attached as Exhibit 39 to the Flynn Affidavit), and Paragraph 36 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.000%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $28,104.09.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Patton loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 40 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 37, CMI is entitled to reimbursement in the amount of $40,257.51.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Patton loan (attached as Exhibit 41 to the Flynn Affidavit), and Paragraph 37 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 8.000%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $26,207.06.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Solano loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 42 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 38, CMI is entitled to reimbursement in the amount of $2,338.12.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Solano loan (attached as Exhibit 43 to the Flynn Affidavit), and Paragraph 38 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 6.875%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $33,591.91.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The Wroblewski loan:

a. Pursuant to the loss reimbursement statement on this loan (attached as Exhibit 44 to the Flynn Affidavit), and as explained by the Flynn Affidavit at Paragraph 39, CMI is entitled to reimbursement in the amount of $45,941.54.

b. Pursuant to Section 19.2 of the Agreement, the origin screen for the Wroblewski loan (attached as Exhibit 45 to the Flynn Affidavit), and Paragraph 39 of the Flynn Affidavit, CMI is also entitled to accrued interest on this loan, at the rate of 7.500%, from the date on which CMI issued the final loss reimbursement statement, through and including August 5, 2008, totaling $50,869.70.

c. Pursuant to 28 U.S.C. § 1961, CMI is additionally entitled to post-judgment interest on this loan.

The total amount due to CMI on the twenty-two (22) loans itemized in the preceding paragraphs, for reimbursement and indemnity, is $1,636,511.24. [Flynn Aff. ¶ 40].

**B. Amounts Due for Attorneys' Fees and Costs**

In Paragraph 23 of the Agreement, Paragon agreed to pay the prevailing party costs and attorneys' fees incurred as a result of any breach of the Agreement. [Flynn Aff. ¶ 41 and Exh. 1 ¶ 23]. CMI retained Featherstone Petrie DeSisto LLP in January 2006. [Flynn Aff. ¶ 42]. From January 2006 through August 2007, Featherstone Petrie DeSisto (and Andrew Petrie's former firm, Petrie Schwartz LLP) (together, the "Featherstone firm") attempted to collect CMI's debt from Paragon. Id. The Featherstone firm and Paragon's in-house counsel exchanged correspondence over a period of 18 months in an attempt to resolve the parties' disputes. At least one exchange included Paragon's request for a significant amount of information about the breaches at issue, which information CMI assembled and provided to Paragon on April 17, 2007. [Petrie Aff. ¶ 6; Flynn Aff. ¶ 43].

The parties were not able to resolve their disputes because Paragon did not provide to CMI the information CMI requested and offered only a de minimus payment. [Flynn Aff. ¶ 44]. Then, in June 2007, Paragon informed CMI it had hired outside counsel and shortly thereafter, in August

16

2007, CMI retained Foley & Mansfield, PLLP to act as co-counsel in this matter and filed this case on August 20, 2007. [Petrie Aff. ¶¶ 7-8].

As discussed in more detail above, although Paragon initially answered CMI's complaint, it stopped participating in the litigation soon after filing its answer. Accordingly, CMI moved to compel Paragon to comply with the CMO, objected to the withdrawal of Paragon's counsel, moved to strike Paragon's answer, and ultimately moved for entry of default and default judgment.

Through July, 2008,[4] CMI has incurred $48,574.50 in attorneys' fees and $1,499.77 in costs with the Featherstone firm and $1,782.00 in attorneys' fees and $978.63 in costs with the Foley & Mansfield firm. [Petrie Aff. ¶¶ 13, 18 and Exh. 2; Foote Aff. ¶¶ 8, 9 and Exh. 1; Flynn Aff. ¶ 46].

The Court finds, in light of the long period of time over which CMI attempted to resolve its dispute with Paragon and the motion practice necessitated by Paragon's actions in this Court, that the attorneys' fees and costs CMI incurred were necessary and reasonable. CMI is thus entitled to costs in the amount of $2,478.40 and attorneys' fees in the amount of $50,356.50. [Petrie Aff. ¶ 18 and Exh. 2; Foote Aff. ¶ 9 and Exh. 1].

### IV. Conclusion

The Court finds CMI is entitled to the entry of default judgment against Paragon in the amount of $1,636,511.24, together with attorneys' fees and costs in the amount of $52,834.90, for a total judgment of $1,689,346.10.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff CitiMortgage, Inc.'s motion for default judgment against defendant Paragon Home Lending, LLC, is **GRANTED.** [Doc. 32]

---

[4] CMI provided the Court with documentation regarding fees and costs it incurred through July 2008. Despite being offer the opportunity to do so, CMI did not supplement its submissions.

**IT IS FURTHER ORDERED** that plaintiff CitiMortgage, Inc., is awarded damages and prejudgement interest against defendant Paragon Home Lending, LLC, in the amount of One Million Six Hundred Thirty-Six Thousand Five Hundred Eleven Dollars and Twenty-Four Cents ($1,636,511.24), together with post-judgment interest as provided by law.

**IT IS FURTHER ORDERED** that plaintiff CitiMortgage, Inc., is entitled to costs in the amount of Two Thousand Four Hundred Seventy-Eight Dollars and Forty Cents ($2,478.40), and attorneys' fees in the amount of Fifty Thousand Three Hundred Fifty-Six Dollars and Fifty Cents ($50,356.50).

An appropriate judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this \_\_\_1st\_\_\_ day of October, 2008.